# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RICHARD CURTIS,
    Petitioner,

    vs.

WARDEN, MARION
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:12-cv-260

Bertelsman, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Marion Correctional Institution in Marion,

Ohio, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This

matter is before the Court on the petition, respondent's return of writ, and petitioner's reply.

(Docs. 1, 5, 6).

## I.    FACTUAL BACKGROUND

The Ohio Court of Appeals, Twelfth Appellate District set forth the following summary

of the facts that led to petitioner's conviction and sentence:

> On the evening of August 13, 1996, appellant contacted the private security staff
> at Lake Waynoka, the private gated community where appellant lived. Appellant
> stated that he needed help, claiming that his wife "Linda has shot herself again."
> Appellant then called 911. Officer Doug Henize, a ranger from the Lake
> Waynoka staff, was first on the scene. Officer Henize observed Linda Curtis in
> bed and bleeding from the side of her head. He noted that her bedroom was quite
> cold from the air conditioning unit. He determined that she had been shot in the
> left temple. She was positioned on her back with her legs pulled up to her body
> and her knees in the air. Henize testified that she was covered by a blanket which
> was tucked around her so her hands were not visible. No weapon was found near
> the body. He noted a pillow with a bullet hole in it "laying along side the bed."
> The pillow, which matched the bed linens from appellant's separate bedroom, had
> blast damage consistent with a firearm being held in direct contact with the pillow
> at the time of discharge. Henize left the bedroom, secured the residence, and
> awaited the arrival of officers from the Brown County Sheriff's Office ("BCSO").
>
> Soon after, the life squad, officers from the BCSO, and coroner arrived at the
> scene. The BCSO conducted a search of the scene and found no signs of forced

entry or burglary. A search of the house produced two shotguns and a rifle, but no handguns.

The coroner found that death was due to a contact range gunshot wound to the head. Because no weapon was found, the manner of death was listed as "undetermined." The coroner concluded the time of death as "morning." The Montgomery County Coroner's Office performed the forensic autopsy for Brown County, finding that the time of death to be "late morning to early afternoon." Subsequent lab analysis indicated no gunshot residue on Linda's hands or feet. The bullet fragment recovered from Linda's head was identified as a ".38 Special .357 Magnum caliber, hollow-point design, a nylon-coated lead."

The lead investigator from the BCSO and the coroner interviewed appellant on the night of Linda's death to gather information regarding the manner and time of death. Appellant stated that he had gone to bed a little before midnight in his bedroom, which was across the hall from Linda's room. He told the coroner that he had been awakened briefly around 3:30 a.m. by what sounded like Linda arguing on the phone with someone. When he left for work that morning at 7:30 a.m., Linda's bedroom door was closed and he did not look in on her. Before going to work, appellant went to his mother's home in New Vienna, about an hour away. Appellant saw his brother and family shortly after 9:00 a.m. outside a bank in New Vienna, inquiring as to where his mother was. He then went to work. Appellant arrived home from work shortly after 7:30 p.m. He brought in groceries he had purchased and called for Linda. After hearing no response, he found her in bed. Appellant told the coroner that, because Linda had attempted suicide four months earlier by shooting herself twice in the stomach, he believed she had killed herself. Appellant denied ever seeing a gun. No arrests were made.

The investigation was re-opened in 2001. The coroner filed an amended death certificate indicating the manner of death as "homicide" after receiving information that there had been no gunshot residue on Linda's hands. Once again, no arrests were made.

In 2008, the BCSO re-opened the investigation, reviewing prior reports, retesting some items, checking the background of appellant, and interviewing about 50 individuals about the case. The coroner was asked to try to narrow the time of death. Noting that Linda's bedroom was very cool, combined with the fact that the body was in full rigor at the time he conducted the examination, the coroner estimated that death had occurred between 2:00 a.m. and 8:00 a.m. on August 13, 1996.

During the course of the investigation, the BCSO discovered that appellant had numerous civil judgments against him in the year before Linda's death. Appellant was listed as the beneficiary on Linda's life insurance policy, although she had made efforts to change the designation to her children before she died. Linda's

2

children and others reported that Linda feared appellant would kill her. She had filed a domestic violence complaint against appellant in 1995, but dismissed it. The BCSO also received information that appellant had owned a Smith & Wesson .357 that was capable of firing a .38 round. The other potential suspect, Ruth Hunter, Linda's alleged lesbian lover, had died in the interim.

BCSO Detective Carl Smith and Chief Deputy John Schadle traveled to Florida in November 2008 to interview appellant at his home. Appellant was cooperative and spoke with them for 56 minutes, but maintained his innocence. Based upon the BCSO investigation, appellant was arrested in Marion County, Florida.

While waiting in the intake area of the Marion County jail, appellant allegedly struck up a conversation with Gerald Payne, an inmate at the jail awaiting an evidentiary hearing on the appeal of his 2007 sentence for burglary, kidnapping, and aggravated assault with a deadly weapon. Payne notified jail officers that he had information about appellant's case. According to Payne, appellant told him of his marriage to Linda; that she had been in an accident and was addicted to medication; she tried to kill herself twice before; she suffered from depression; one of her friends had died shortly before her death; and that he was tired of taking care of her and wanted away from her. Appellant allegedly told Payne that "he had disposed of the gun and no one would find it." Payne asked appellant if he relieved Linda of her suffering. Payne admitted that appellant did not outright confess to killing Linda, but hung his head down and shook his head in the affirmative.

(Doc. 5, Ex. 14, pp. 1-4).

## II.   PROCEDURAL HISTORY

### State Trial Proceedings

On March 5, 2009, the Brown County, Ohio grand jury returned a two-count indictment charging petitioner with aggravated murder and murder. (Doc. 5, Ex. 1). Both counts included a firearm specification. *Id.* On March 24, 2009, petitioner entered a not guilty plea to the charges in the indictment. (Doc. 5, Ex. 2).

On June 5, 2009, petitioner, through counsel, filed a motion to dismiss the indictment based on the delay between the alleged offenses and the indictment. (Doc. 5, Ex. 3). The trial court overruled petitioner's motion on July 14, 2009. (Doc. 5, Ex. 7).

3

On September 25, 2009, following a jury trial, petitioner was found guilty of all charges. (*See* Doc. 5, Ex. 9). Petitioner was sentenced to a term of life imprisonment with parole eligibility after serving twenty years of imprisonment for his aggravated murder conviction and a consecutive term of imprisonment of three years for the gun specification. (Doc. 5, Ex. 10). The murder conviction was merged with the aggravated murder conviction for the purposes of sentencing. *Id.*

**Direct Appeal**

On October 1, 2009, petitioner, through his trial counsel, filed a timely notice of appeal to the Ohio Court of Appeals. (Doc. 5, Ex. 11). Petitioner was subsequently appointed new appellate counsel, who filed a merits brief on petitioner's behalf on June 28, 2010. (*See* Doc. 5, Ex. 12). Therein, petitioner presented the following assignment of error for the court's consideration:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DENIED HIS MOTION FOR ACQUITTAL BECAUSE THE EVIDENCE AGAINST HIM WAS INSUFFICIENT TO SUPPORT A CONVICTION, THEREBY DENYING HIM HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE ONE OF THE OHIO CONSTITUTION.
>
> **Issue Presented for review and argument:**
> Convictions for Aggravated Murder and Murder were improper when they were based on entirely circumstantial evidence or hearsay evidence, from which impermissible inferences were drawn by the jury.

*Id.* On October 12, 2010, the Ohio Court of Appeals overruled petitioner's assignment of error and affirmed the judgment of the trial court. (Doc. 5, Ex. 13, 14).

Petitioner did not appeal from the Ohio appellate court's decision to the Ohio Supreme Court.

4

**Application to Reopen Direct Appeal**

On January 10, 2011, with the assistance of the Ohio Public Defender, petitioner filed an application to reopen his direct appeal pursuant to App. R. 26(B). (Doc. 5, Ex. 15). In his memorandum in support of reopening his appeal, petitioner argued that his appellate counsel was ineffective for failing to raise the following two assignments of error:

1. The trial court erred when it overruled Richard Curtis' motion to dismiss on the basis of delayed indictment.

2. Mr. Curtis was provided ineffective assistance of counsel when trial counsel failed to object to prejudicial hearsay.

*Id.* On March 2, 2011, the Ohio Court of Appeals denied petitioner's application. (Doc. 5, Ex. 17).

On April 18, 2011, petitioner, through counsel, appealed to the Ohio Supreme Court from the Ohio Court of Appeals' decision denying his application to reopen. (Doc. 5, Ex. 18). In his memorandum in support of jurisdiction, petitioner raised the following two propositions of law:

Proposition of Law I: Requiring a defendant to show substantial prejudice after a pre-indictment delay violates a defendant's right to due process. Fifth and Fourteenth Amendments, United States Constitution; Section 16, Article I, Ohio Constitution; *State v. Luck* (1984), 15 Ohio St.3d 150.

Proposition of Law II: When an appellate attorney fails to raise meritorious issues in a criminal defendant's direct appeal of a conviction, the attorney renders constitutionally ineffective assistance. U.S. Const. amend. VI, XIV; Ohio Const. art. I, Sec. 16.

(Doc. 5, Ex. 19). On July 8, 2011, the Ohio Supreme Court dismissed the appeal "as not involving any substantial constitutional question." (Doc. 5, Ex. 21).

**Post-Conviction Petition**

On September 15, 2011, petitioner, through counsel, filed a petition to vacate and set

5

aside his convictions and sentence. (Doc. 5, Ex. 22). Therein, petitioner argued that his convictions and sentence are void because of juror bias and were based on misconduct by the prosecution in relation to the allegation of juror bias. *See id.* On January 28, 2011, after conducting an evidentiary hearing, the trial court denied the petition. (Doc. 5, Ex. 25). Petitioner did not appeal from the ruling.

## Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus action on April 2, 2012. (Doc. 1). In the petition, petitioner raises the following three grounds for relief:

**Ground One:** Denied right to due process, pre indictment delay

Supporting facts:
1. Linda Curtis was murdered on August 13, 1996. The defendant Richard Curtis was one of three suspects.

2. Ruth Hunter, Linda Curtis' lesbian lover died in 2004. Detective Carl Smith admitted that Ruth Hunter was a suspect and that he had tried to get a statement from her as part of his investigation, but she had died during the thirteen (13) year delay without being fully investigated.

3. Angela Miller a hostile key witness was available to testify that she saw Linda Curtis and an unidentified male, not the defendant at McDonalds drive thru the morning of her murder, however taking the stand was unable to recall the event and specifically mentioned that her inability to testify was due to the length of time that had passed.

4. The forensic pathologist who performed the original autopsy was incapacitated and confined in a mental institution at the time of trial and was not available to testify for the defense.

5. During the thirteen year lapse, six key witnesses' had passed on and another had forgotten due to the time span.

6. No physical evidence has ever been found and no murder weapon has ever been discovered or produced.

**Ground Two:** Speedy trial rights violated

Supporting facts:

The defendant, Richard Curtis was arrested on February 20, 2009. The trial started September 21, 2009.

**Ground Three:** Ineffective counsel

Supporting facts:
My trial counsel did not object to heresay (sic) statements and my appellate attorney was ineffective and showed deficient performance in failing to raise the issue in my appeal. Trial counsel failed [to] advise defendant of speedy trial rights and appellate counsel failed to brief on appeal. Trial and appellate counsel did not object [to] "gruesome pictures" and failed to challenge the state's introduction [of] irrelevant evidence.

(Doc. 1).

Respondent has filed a return of writ, arguing that the petition should be denied. (Doc. 5). Respondent contends that petitioner's grounds for relief are procedurally defaulted and without merit. *See id.*

## III.   THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

*Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's

adjudication only results in an 'unreasonable application' of clearly established federal law when

'the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-

600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.

As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's
> standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179
> L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the
> record before the state court where a claim has been adjudicated on the merits by
> the state court). It is not enough for us to determine that the state court's
> determination is *incorrect*; to grant the writ under this clause, we must hold that
> the state court's determination is *unreasonable*. . . . This is a "substantially higher
> threshold.". . . To warrant AEDPA deference, a state court's "decision on the
> merits" does not have to give any explanation for its results, *Harrington v.*
> *Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need
> to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the
> result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3,
> 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold

that when a state court rules against a defendant in an opinion that "addresses some issues but

does not expressly address the federal claim in question," the federal habeas court must presume,

subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the

"restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133

S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete

bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). As the Supreme Court explained, in *Greene*:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade*, 538 U.S. [at] 71-72 . . .; emphasis added).

132 U.S. at 44.

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right

9

had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v.*

*Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied*, 132 S.Ct. 127 (2011)). The writ may

issue only if the application of clearly-established federal law is objectively unreasonable "in

light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of

the relevant state court decision." *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000) (citing

*Williams*, 529 U.S. at 412).

### A. Ground One of the petition is procedurally defaulted and without merit.

In Ground One, petitioner contends that he was denied his due process rights based on

pre-indictment delay. (Doc. 1, Attachment; Doc. 6, pp. 3-5). Specifically, petitioner argues that

the thirteen year delay between the death of the victim, Linda Curtis, in 1996 and his indictment

for her murder in 2009 resulted in actual prejudice. (Doc. 6, p. 4). According to petitioner, he

was prejudiced because the only alternative suspect in Curtis's death died in 2004 and a key

witness was unable to testify about having seen Curtis with an unidentified male on the morning

of her death because of the delay in bringing the indictment. *Id.* at 4-5. Petitioner further

contends that the prosecution did not provide any justifiable reason for the thirteen year delay.

*Id.* at 5.

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state defendant with federal constitutional claims must fairly present those claims to the

state courts for consideration before raising them in a federal habeas corpus action. *See* 28

U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard*

*v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to

the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v.*

*Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990);

*Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly

present his constitutional claims through the requisite levels of state appellate review to the

state's highest court, or commits some other procedural default that prevents a merit-based

review of the federal claims by the state's highest court, he may have waived the claims for

purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S.

255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v.*

*Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may

be barred from considering an issue of federal law from a judgment of a state court if the

judgment rests on a state-law ground that is both "independent" of the merits of the federal claim

and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The

Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner

files an untimely appeal, *Coleman,* 501 U.S. at 750, if he fails to present an issue to a state

appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or

if he fails to comply with a state procedural rule that required him to have done something to

preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

*Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to

bar consideration of a federal claim on habeas corpus review unless the last state court rendering

a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural

bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). In

those cases where the last state court to render a reasoned opinion explicitly relies on a

procedural bar, the court will presume that a later unexplained order did not silently disregard the

procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-

04 (1991). Moreover, in *Harris,* the Supreme Court explained that the rule requiring that the

state court plainly state that its judgment rests on a state procedural default "applies only when a

state court has been presented with the federal claim" raised by the state prisoner as a ground for

federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane,* 489 U.S. 288, 299

(1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had

the opportunity to address a claim that is later raised in a federal habeas proceeding."). The

Court stated: "Of course, a federal habeas court need not require that a federal claim be

presented to a state court if it is clear that the state court would hold the claim procedurally

barred." *Harris,* 489 U.S. at 263 n.9.

     The rule precluding federal habeas corpus review of claims rejected by the state courts on

state procedural grounds applies only in cases where the state rule relied on by the courts is

deemed "adequate" or, in other words, involves a "firmly established and regularly followed

state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991);

*Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th

Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,*

975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th

Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every

relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410

n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v.*

*Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under

the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with
> the rule. . . .  Second, the court must decide whether the state courts actually
> enforced the state procedural sanction. . . .  Third, the court must decide whether
> the state procedural forfeiture is an "adequate and independent" state ground on
> which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw,* 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407,

417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied,* 131 S.Ct. 2117 (2011); *see also*

*Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012).  Under *Maupin* and as discussed

above, if the three prerequisites are met for finding a claim is procedurally defaulted under the

adequate and independent state ground doctrine, federal habeas corpus review of the defaulted

claim is precluded unless the petitioner can demonstrate cause for and prejudice from his

procedural default or that failure to consider the defaulted claim will result in a "fundamental

miscarriage of justice." *Hoffner,* 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493

F. App'x at 669.  *See also Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262; *Murray v.*

*Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v.*

*Sykes,* 433 U.S. 72, 87 (1977).

In the instant case, petitioner procedurally defaulted his pre-indictment delay claim by

failing to raise the claim on direct appeal to the Ohio Court of Appeals.[1]  While petitioner raised

---

[1] Ohio law provides that an issue not raised on direct appeal is barred by the doctrine of *res judicata.  See State v.*
*Perry*, 226 N.E.2d 104, 105-06 (Ohio 1967) (syllabus); *State v. Combs*, 652 N.E.2d 205, 209 (Ohio App. 1 Dist.
1994) (holding that *res judicata* stops post-conviction relief for claims that could have been raised on direct appeal).

the claim in connection with his Rule 26(B) application to reopen his direct appeal by asserting appellate counsel was ineffective for failing to bring the underlying claim as an assignment of error, his Rule 26(B) application did not preserve the merits of the underlying claim for habeas review. *See Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008). "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Id.* at 312 (quoting *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005)). Consequently, by failing to raise the underlying pre-indictment delay claim raised in Ground One of the petition, petitioner has waived the claim absent a showing of cause for his default and actual prejudice as a result of the alleged errors, or that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750. *See also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

As cause for the procedural default, petitioner contends that his failure to raise the claim was due to the ineffective assistance of appellate counsel. (Doc. 1, p. 7). Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at 488-89. *See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In order for the ineffective assistance of appellate counsel to serve as cause to excuse a procedural default petitioner must show that his appellate counsel's failure to raise

---

The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that is not raised by a petitioner on direct appeal is subsequently barred from review based on the doctrine of *res judicata*. *See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998) (recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust,* 17 F.3d at 160-61 (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy,* 151 F.2d at 100 (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

14

the claims rose to the level of a constitutional violation under *Strickland*. *McFarland v. Yukins,* 356 F.3d 688, 699 (6th Cir. 2004). In evaluating the ineffective assistance of appellate counsel claim, the Court must assess the strength of the claims that appellate counsel failed to raise. *See Wilson v. Parker,* 515 F.3d 682, 707 (6th Cir. 2008). In order to amount to ineffective assistance under *Strickland*, petitioner must demonstrate a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland*, 356 F.3d at 699. "If there is a reasonable probability that [the petitioner] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

In denying petitioner's application to reopen his direct appeal, the Ohio Court of Appeals found that petitioner's appellate counsel was not ineffective for failing to raise the pre-indictment delay issue because the claim is without merit. (*See* Doc. 5, Ex. 17, pp. 1-2). The Ohio Court of appeals found that "[a]lthough there was a 13-year delay between the murder and his indictment, something which could certainly cause memories to fade, it does not appear that appellant was substantially prejudiced by the delay." *Id.* at 2.

The Speedy Trial Clause of the Sixth Amendment is not triggered until a formal indictment or information is filed or "the actual restraints imposed by arrest and holding to answer a criminal charge" have occurred. *United States v. Lovasco,* 431 U.S. 783, 788-89 (1977) (quoting *United States v. Marion,* 404 U.S. 307, 320 (1971)); *see also Doggett v. United States,* 505 U.S. 647, 655 (1992). In a case such as this, involving a claim of constitutional error stemming from pre-indictment delay, only the Fourteenth Amendment's Due Process Clause may be invoked to provide protection "against oppressive delay." *Lovasco,* 431 U.S. at 789 (citing *Marion,* 404 U.S. at 324).

15

In *Lovasco*, the Supreme Court held that the Due Process Clause plays a limited role in protecting criminal defendants who are actually prejudiced by excessive pre-indictment delay. *Lovasco*, 431 U.S. at 789. Proof of prejudice is "generally a necessary," but is insufficient standing alone to establish a due process violation; the due process inquiry also requires consideration of the reasons for the delay. *Id.* at 790; *see also United States v. Bryant*, 951 F.2d 350 (table), Nos. 90-1831, 90-1836, 1991 WL 256555, at **2 (6th Cir. Dec. 2, 1991).

The Sixth Circuit has consistently interpreted *Lovasco* as holding that a dismissal on due process grounds for pre-indictment delay is warranted only when the defendant shows (1) substantial prejudice to his right to a fair trial; and (2) that the delay was intentionally caused by the government to gain a tactical advantage. *See, e.g., United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009) (and Sixth Circuit cases cited therein); *United States v. Wright*, 343 F.3d 849, 859 (6th Cir. 2003); *Burns v. Lafler*, 328 F. Supp.2d 711, 719 (E.D. Mich. 2004) (citing *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992)). To establish a due process violation, the defendant must show that the delay "caused him *actual* prejudice in presenting his defense." *Schaffer*, 586 F.3d at 425 (quoting *United States v. Gouveia*, 467 U.S. 180, 192 (1984) (emphasis added)). Moreover, delay attributable to the legitimate investigation of a crime does not violate due process even if such delay might have "somewhat prejudiced" the defense. *See Lovasco*, 431 U.S. at 796; *see also Burns*, 328 F.Supp.2d at 719.

In this case, as the Ohio Court of Appeals' reasonably determined, petitioner has failed to show actual prejudice because of the delay. Petitioner first claims that he was prejudiced because Ruth Hunter, the alleged lover of the victim, died in between the time of the murder and his indictment. (Doc. 1, Attachment; Doc. 6, p. 4). According to petitioner, "[b]ecause the only alternative suspect in the murder of Linda Curtis was available in 1996, but died during the

16

thirteen-year delay without being fully investigated[,] Mr. Curtis was prejudiced." (Doc. 6, p. 4).

During trial, Detective Smith, the detective conducting the investigation of petitioner's reopened

case in 2008, did testify that that Hunter was initially considered a suspect and that he was

unable to interview Hunter because she had died, as petitioner argues. (Doc. 5, Transcript pp.

801-802). However, Detective Smith also testified that he did not obtain any information during

the course of his investigation to suggest that Hunter had anything to do with the murder. (Doc.

5, Transcript pp. 801, 806-807). Furthermore, despite Hunter's death, petitioner introduced

testimony at trial that the victim was afraid of Hunter and presented Ruth Hunter to the jury as a

second suspect. *Id.* at 833, 883, 902-03. Petitioner has not offered any explanation as to what

Hunter's testimony would have been or how her testimony would have aided his defense or

otherwise affected the outcome of the trial. *See United States v. Vaughn*, 444 F. App'x 875, 878-

79 (6th Cir. 2011) (and cases cited therein), *cert. denied,* 132 S.Ct. 1955 (2012). Because

petitioner fails to show actual prejudice stemming from the delay, the Ohio Court of Appeals

reasonably determined that his claim is without merit.

Second, petitioner contends that "a key witness was available to testify that she saw

Linda Curtis and an unidentified male, not the defendant, at McDonald's drive thru on the

morning of her murder." (Doc. 5, Transcript p. 5). Petitioner claims he was prejudiced by the

delay because at trial "the witness was unable to recall the event and specifically mentioned that

her inability to testify was due to the length of time that had passed." *Id.* He contends that the

delay thus prevented him from providing testimony that would have implicated an alternative

suspect as part of his defense. *Id.* However, as respondent has argued in the return of writ,

petitioner has failed to show actual prejudice in light of the trial record. At trial, Angela Miller

testified on behalf of the defense concerning her prior statements that she witnessed the victim

with an unidentified male on the morning of her death. *Id.* at 856-57. Miller provided

statements to investigators on September 25, 1996 and December 24, 2008. *Id.* at 865.

Although Miller initially had trouble remembering the content of her prior statements, the trial

court permitted her to refresh her memory by reviewing the 1996 statement and for the defense

to treat her as a hostile witness. *Id.* at 863-68. Miller ultimately testified as to the content of her

prior statements, specifically testifying that she saw the victim and a male at McDonalds on the

day of the victim's death and providing a physical description of the individual. *Id.* at 859, 869.

*See Wright,* 343 F.3d at 860 ("We have held that loss of memory is an insufficient reason to

establish prejudice.") (citing *Payne v. Rees,* 738 F.2d 118, 121-22 (6th Cir. 1984)).[2]

After review of the record in this case, the undersigned finds that the Ohio Court of

Appeals reasonably determined that petitioner's pre-indictment delay claim is without merit. As

the state appellate court reasonably found, petitioner has not demonstrated that he was actually

prejudiced by the delay in light of the record. Furthermore, petitioner has not even remotely

demonstrated that the delay was intentionally caused by the government to gain a tactical

advantage. The record in this case demonstrates that the delay was due to the legitimate

investigation of the crime and petitioner was indicted after police obtained new information

about the case.[3] *See Lovasco,* 431 U.S. at 796; *see also Burns,* 328 F.Supp.2d at 719. Because

---

[2] In the supporting facts for Ground One of the petition, petitioner claims that the forensic pathologist who
performed the initial autopsy on the victim was "incapacitated and confined in a mental institution at the time of trial
and was not available to testify for the defense." (Doc. 1). He also claims, without elaboration, that six key
witnesses died during the delay and one "had forgotten due to the time span." *Id.* Petitioner has failed to identify
any of these witnesses in his habeas petition and offers no explanation as to the content of any lost testimony or how
such testimony would have aided his defense or impacted the outcome of his trial. *See Vaughn,* 444 F. App'x at
878-9. In any event, petitioner has waived these claims by failing to raise the factual assertions in the Ohio Court of
Appeals or the Ohio Supreme Court.

[3] In a June 12, 2009 affidavit, Detective Smith states that petitioner was only indicted after the police discovered
that the victim attempted to change the beneficiary of her life insurance policy shortly before her death because she
thought petitioner was going to kill her; after the Brown County Coroner opined that the time of death was earlier
than previously thought based upon the temperature of the room where the victim was shot and the amount of rigor

petitioner's underlying pre-indictment delay claim is itself without merit, the Ohio Court of

Appeals reasonably determined that his appellate counsel was not ineffective for failing to raise

the meritless claim on appeal. *Davie*, 547 F.3d at 312 ("if the underlying substantive claims

have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise

those claims on appeal."); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel

cannot be ineffective for failure to raise an issue that lacks merit.") (citation omitted).  Petitioner

therefore may not rely on the ineffective assistance of appellate counsel as cause for his

procedural default.

Accordingly, petitioner has procedurally defaulted and waived the pre-indictment delay

claim raised in Ground One of the petition and is not entitled to habeas relief based on this

ground for relief.

**B.  Grounds Two and Three are procedurally defaulted and waived.**

In Ground Two, petitioner argues that his speedy trial rights were violated.  (Doc. 1, p. 8).

In Ground Three, petitioner alleges that he was denied the effective assistance of trial and

appellate counsel. *Id.* at 9.  Petitioner contends that his trial counsel failed to advise him of his

speedy trial rights and failed to object to hearsay statements and the state's introduction of

gruesome pictures and irrelevant evidence at trial.  Petitioner further argues that appellate

counsel was ineffective for failing to raise the claims raised in Grounds Two and Three on

appeal. *Id.*

Petitioner procedurally defaulted the claims raised in Grounds Two and Three.  With

regard to Ground Two, petitioner defaulted the speedy trial claim when he failed to raise the

claim on direct appeal. (*See* Doc. 5, Ex. 12).  Petitioner also failed to raise any of the ineffective

---

mortis that was present; and after learning that petitioner made incriminating comments while being held in a
Florida jail.  (*See* Doc. 5, Ex. 5, Affidavit).

assistance of trial counsel claims alleged in Ground Three on direct appeal. *See id.* Although petitioner argued trial counsel was ineffective for failing to object to prejudicial hearsay in connection with his Rule 26(B) application to reopen his direct appeal by asserting that appellate counsel was ineffective for failing to bring the underlying claim as an assignment of error, as noted above his Rule 26(B) application did not preserve the merits of the underlying trial counsel claim for habeas review. *See Davie,* 547 F.3d at 312.

Petitioner's ineffective assistance of appellate counsel claims raised in Ground Three are also procedurally defaulted because petitioner failed to fairly present any of the claims to the Ohio Supreme Court. *See O'Sullivan,* 526 U.S. at 847-48. Petitioner failed to argue that his appellate counsel was ineffective for failing to raise assignments of error relating to gruesome pictures, irrelevant evidence or speedy trial rights at any point during his state court proceedings. Although petitioner did argue his appellate counsel was ineffective for failing to raise the prejudicial hearsay claim in his application to reopen, petitioner defaulted that claim by failing to assert it on further appeal to the Ohio Supreme Court. (*See* Doc. 5, Ex. 19). Therefore, it appears that petitioner has procedurally defaulted and waived the claims raised in Grounds Two and Three, absent a showing of cause and prejudice.

Petitioner argues that the ineffective assistance of trial and appellate counsel constitute cause for his defaults. (Doc. 1, pp. 9-10). As noted above, ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at 488–89; *Edwards,* 529 U.S. at 452; *Burroughs,* 411 F.3d at 668. In this case, because petitioner procedurally defaulted his ineffectiveness of trial and appellate counsel claims, petitioner cannot rely on the ineffectiveness of trial or appellate counsel as cause to excuse his procedural defaults.

Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray*, 477 U.S. at 495-96. *See also Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Bonilla*, 370 F.3d at 498. To establish a credible claim of actual innocence sufficient to excuse his procedural defaults, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial." *Id.* at 327-28. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup*, 513 U.S. at 321.

Petitioner has failed to establish a credible claim of actual innocence under the *Schlup* standard as he has not supported his allegations of constitutional error with any new evidence of actual innocence. Petitioner's habeas petition and reply to the return of writ include arguments based solely on the facts and claims presented during his trial and on appeal. Accordingly, the Court is unable to reach the merits of his claims. "Without any new evidence of innocence, even

the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup,* 513 U.S. at 316. Petitioner has not demonstrated that his procedural defaults should be excused under the "fundamental miscarriage of justice" exception.

Therefore, petitioner has procedurally defaulted and waived the claims raised in Grounds Two and Three of the petition. Accordingly, he is not entitled to habeas relief based on these grounds for relief.

Accordingly, in sum, petitioner is not entitled to relief based on the claims raised in the petition. Having found that the claims raised in petitioner's three grounds for relief are procedurally defaulted and waived, the petition (Doc. 1) should be **DENIED** with prejudice.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[4]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting

---

[4] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of the defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

22

this Report and Recommendation would not be taken in "good faith," and, therefore, should

**DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See*

Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: _10/3/13_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RICHARD CURTIS,
     Petitioner,

vs.

WARDEN, MARION
CORRECTIONAL INSTITUTION,
     Respondent.

Case No. 1:12-cv-260

Bertelsman, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee |
| | B. Received by ( *Printed Name* )    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Richard Curtis #615-995<br>Marion Corr. Inst.<br>PO Box 57<br>Marion, OH 43302 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)* ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7011 3500 0001 5345 9473 |

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540